Case number 25-5402, Terrence Burnett v. Faurecia Emissions Control, arguments not to exceed 15 minutes per side. Mr. Thompson, you may proceed for the appellant. Morning. Morning, Your Honors. Robert Thompson for appellant. I'd like to reserve three minutes for rebuttal. So this case asks a simple question. If a district court relies upon an intervening incident to defeat causation, must the court also look at comparator evidence or pretext evidence? Our answer is yes. Yes, it must. Can I ask you something about the way this case was presented to Judge Hale? Because I was just kind of confused when I read his opinion, and he has a footnote at the end that says, in light of how this case was presented, I don't really need to address pretext evidence. And when I look at your briefs below and the way it was presented to him, it's a little bit unfair what's happening in front of our court, because everything below was all temporal proximity. And so he takes the case as this is a prima facie case. He looks at our law that says, hey, you know, temporal proximity, it's kind of tricky, but this is probably too long. But at all events, the potential inference of causation is broken by the intervening incident. So that's how the case is presented to him. Now, I happen to think there's a lot to what you're saying on appeal, that you can show that it's more than just temporal proximity, that differential treatment of comparable employees does help you show causation. That's precisely why pretext, that's the whole point of what's going on in these cases. And I happen to be quite a critic of McDonnell Douglas, because I think this is what led you down this road. But why is it fair to Judge Hale to send this case back to him on what I sincerely think is a completely different theory than was presented to him below? Well, I guess first it's de novo review. So that's issue one. And I think it was addressed below. I mean, the comparators were briefed on. I read your brief. Give me the cite, I'll go back and reread the brief. I read your brief to be sure it's temporal proximity. And that's what's so confusing. Judge Hale's a really good judge. I'm thinking, why is he not addressing this argument? And then I realized, oh, this was framed, the briefing below was framed, prima facie case, we're going to do temporal proximity as our way of showing causation. And then once we have prima facie satisfied, we'll then do the pretext. So in other words, when you say it was presented below, it was presented in a separate part of the brief, a separate part of, you know, second part of McDonald, Douglas, et cetera, or no, third part, right? The second is the employer says why, and then you say pretext. So he just did this as prima facie because it was presented to him that way. And so I just, I don't know, it just doesn't seem right to me. I guess, I think, I'll check when we're at a break here. I believe it was mentioned in one or two sentences in the causation phase. That is, the best part is at page 15, you say causal connection and temporal proximity. Then you start with temporal proximity, but then you say, additionally, the failure to investigate and their immediate and disproportionate disciplinary actions, which is what we've been mostly briefed on here. But would that be the place where you rely on more than temporal proximity? One phrase, I've got it right in front of me. No, I know, the same thing. Judge Hale missed this phrase. 15 and 16. Yeah, and I have rules about developing arguments. And how is this one developed? Oh, footnote. Oh, the footnote, I love it. The footnote is only about the failure to investigate. So it's not, it's not even about the comparator point. So you have this clause, disproportionate disciplinary actions, which could just be disproportionate. The way I would read that as a district court judge, given what comes before it, it was disproportionate to fire him for this incident. That was what was disproportionate. Disproportionate doesn't say comparing to everyone else. So anyway, I just feel like the argument's not raised. You have a great argument on appeal. That's why it's frustrating to me. It just doesn't seem fair to him. Well, I guess, again, if we're looking at Terrence Burnett, I mean, I get your argument, but practically speaking, practically speaking with briefing, do you re-brief? Like, do you write the entire comparator argument in the causation section and then re-brief it later on? I think that that's probably why it wasn't done that way. If you don't survive prima facie, case is over. And then judge writes footnote, 16 in this case, I don't need to deal with comparator evidence because that's a pretext argument, which is the third prong of McDonnell-Douglas, which you only get to if you have a prima facie case, and then the employer offers a non-discriminatory reason for their action. So, I mean, again, I think McDonnell-Douglas is really unfortunate, and I think this is like exhibit A, the problems it leads people to deal with, because you're quite right how duplicative it is to do pretext at the third and then use pretext for your causation argument. But without pretext, I'm just not sure you have a causation argument. That's what bothers me. But I think we did argue that... You are, on appeal, you are arguing pretext as causation. So you've shown it's not that difficult to duplicate it. Correct, Your Honor. But again, we did argue that there was a two-month period. The temporal proximity should have been enough for causation. That was part of our argument. Black-letter law is, first of all, two months, close call. It's all over the map. But the black-letter principle, even if it's enough, is intervening events break the temporal causation, you know, link. Right. I mean, it does. It can. But the court should have looked at the pretext. Pretext was argued later on. I mean, it was in the brief, just later in the brief. So... We should reverse Judge Hale for not considering pretext in the prima facie case when it was only argued on prong three? Yes, Judge. I mean, I guess, Your Honor, I think so. Because, again, you would be rewriting your brief twice. You did that on appeal. Correct. It was very brief in front of us. You had no trouble doing both. Yeah, go for it. I mean, I think, and I'm very sympathetic to the kind of repetition issue. As a brief writer, not that long ago, you're kind of where to put things and things like that. And sometimes there are references to elsewhere to try and deal with this issue. Is the language that Judge Boggs cited, do you feel like enough of kind of a reference to bring in, hey, we should look at comparators here, too? I don't necessarily say we're looking at pretext evidence to prove causation as much as comparator evidence. But however framed, do you feel like that there were ways that were signaling that your argument was more than just temporal proximity? Right. I mean, I think you argue that one line, I guess, that, hey, he was treated differently than other people. It doesn't say that. Disproportionate disciplinary actions. The disproportion can be, this was a minor incident. It should not lead to a firing. That's the phrase. It doesn't cite anything else. Let me let you off the hook. I've managed to express myself. The other side has not claimed forfeiture. That is your best argument. All right? You can forfeit the forfeiture. All right? So we have a situation where they have not claimed forfeiture, so march ahead. We can actually discuss the law. Well, you're in the same court. Well, you're in the same court. I was Judge Hale. I'll let you have the conversation with him about this case. But, you know, my gosh, McDonnell Douglas. It's not you. It's McDonnell Douglas that leads us down this road. But keep going as to why there's pretext, etc. Right. Again, I think that there are some cases, again, in this circuit that said, do we even talk about causation? Or do we even talk about pretext in the causation stage? At least in one of my cases, we dropped into a footnote. So when some prima faciem McDonnell Douglas case's causation is not in the prima facie case. Sometimes it's just where you were replaced by, in a race case, a person or a gender case, a person of a different gender or a different race. That's all you have to do. So it's actually easier in those prima facie McDonnell Douglas cases, not in retaliation. Right. So again, we have the two-month. I think that that's the simplest solution here, that this court has said that three months, it can be temporal proximity and temporal proximity, as we know alone, can be enough. And in this case, we had an EEOC complaint and an internal complaint. And two months later, we had a termination. So that generally should have been enough to satisfy the low causation. Is your main argument today temporal proximity on causation? Well, no. I think that my also other argument is, I think one, we could have established causation. And even if we didn't, I think that generally... Establish causation because... Are you going to say in addition to temporal proximity, or are you going to say because of temporal proximity? Both. Okay, so complete the sentence. Yeah, I think that if we would have looked at the comparator evidence at the causation stage, that would have been... You're going in position, in a sense, ought to be that we've got temporal proximity and we've got other things, which is enough for causal connection. Correct. Therefore, you don't need to fall back on temporal alone, although you seem to like it. Well, let me ask you this. Supposing that we cut through this and we say, okay, you're actually right. You actually did make a prima facie case. At that point, am I right, really, that we shouldn't get into pretext qua pretext? We remand, we reverse, we say, yes, you did make a prima facie case. Now go ahead with McDonnell-Douglas, no matter how little Chief Judge Sutton likes it, because then they can, you know, if they think they've got a case beyond that, they raise it and then you fight it out. We're not the ones that ought to go through the rest of the McDonnell-Douglas, should we? I think either way would work. You could remand it to have the pretext analysis or we can review the, you know, pretext in this case, the comparators in this case. So this will be really funny. I kind of want to do this, just so you know. Okay. I'm just now enjoying myself. The opinion we're contemplating is an opinion that says we're going to reverse on causation. There was a prima facie case. The key mistake made by the district court judge was not appreciating how pretext established causation. But we've done enough for the day. We'll let the district court decide whether pretext satisfies the third prong. I do not want to be near that courtroom when this happens. Doesn't that seem crazy? We will have, you're the one that said they're the same inquiry. I happen to think they are the same inquiry. Wouldn't that be very strange to say we're just going to do, use pretext for causation, lay out how unfair it seems to have treated these two other people with either the same types of accidents or worse discipline. They don't get fired. That's what makes it look like retaliation. That's what makes it look like causation. And we're going to have him then say, but this is isolated. This causation analysis is isolated. The third prong pretext analysis is an open field, and he can run any which way he wants. Is that really possible? I think that the minimal burden of causation should have gotten past that to where we can get to the pretext at the bottom, which is a little harder burden for the employee to prove. The motion for summary judgment, which he granted, which potentially we're saying he shouldn't have granted. Once you do that, we don't decide the rest of the case. You've got evidence. I don't know anything about all this stuff about running into flagpoles and so on. I mean normally this would be litigated, right? I mean I don't see how you win at this point, because we haven't seen or decided any of those facts. Normally. He would only win in the sense of going to a jury. Yeah, when you deny summary judgment, then you go to a jury. Yeah, correct, correct. So you, I mean again, you could easily lose before a jury. Oh yeah, yeah. I think we've got it. Let's hear the other side and you'll get your full rebuttal and see how this is gonna play out. Good morning. Good morning, your honors. Anthony McNamara on behalf of the Appalachian Emissions Control Systems. It's a privilege to be in front of you today, and I want to to start by focusing on what the court could do with this case in its ruling, and I don't think that remand for further decision is the only option. This court has de novo review. This court could affirm on alternative grounds. If this court wanted to evaluate comparator evidence at the prima facie stage, it could. If the court wanted to hold that Mr. Burnett has established a prima facie case and we get to the pretext element, it could affirm summary judgment there as well. Is there, is there, what's the word, delta, a gap between the causation pretext analysis and the third primary Donald Douglas pretext analysis? In other words, if you imagine a court saying, listen, you've established a prima facie case of causation here because, put temporal proximity to the side, our evidence of causation is, you know, you claimed you were doing this because he was, you know, had this bad, bad accident captured in film, and lo and behold, around the same rough period of time, people had either similar or in one case, I would say, violated more rules, and you didn't fire those people. I'm pretty confident most case law says that's enough for prima facie causation. Why wouldn't that be exactly the analysis at the third prong of McDonnell Douglas? So, you know, the company, your client comes forward and says, well, well, well, we fired him because of the accident. They now say, well, that was pretext, because look at these two other accidents, and the only difference is they weren't filing lawsuits against the company. Wouldn't the pretext analysis be identical in the causation prima facie and the third prong of McDonnell Douglas? Is that making sense, the question? It does make sense, Chief Judge Sutton, and, and I, I believe in the, in this court's Jackson opinion, there was a distinction between the non-onerous burden at the prima facie stage, even when looking at comparator evidence, and then there being more scrutiny at the, at the pretext stage towards the, the comparator evidence presented. And, and I think here, either way you cut it, the comparator evidence doesn't indicate that these individuals that Mr. Burnett has cited, William Washburn and Derek Hampton, are in fact comparators, that they're similarly situated, that they engaged in acts of comparable seriousness. Go with that, that seems the heart of the case, because I guess I wasn't thinking that was true. I'm curious how you can say that. Sure, so, so with William Washburn, so to start with Mr. Burnett, the issue with Mr. Burnett is that he drove forward with an obstructed view directly into a pole. I saw it. You've seen the video. I wouldn't say it was, I wouldn't want that if I owned the factory, but I also wouldn't say, oh my gosh, what the heck's going on here, but keep going. The other comparators were in an area called the General Motors area, where halls are a little tighter, you require more pinpoint speed to turn around, and in both instances, with starting with William Washburn, I mean, all we have are the corrective action notices, right, and... I thought one of them lied about it. Christopher Lawley? He was fired. No, I thought one of the people that wasn't fired. No, sorry, go ahead, judge. No, no, I must be misremembering, and I thought there were two comparators, and I thought there was a way that two comparators, at least one of them, had behaved worse, and I thought one of the behaving worse points was not telling the truth about the... Or didn't report it. There was a failure to report. I guess he had hit a fire alarm, and the fire alarm went off, and he did not report that, and the disciplinary action says, look, even if you think this is a minor thing, you still need to report it. That's the rule, and we're going to ding you for that. We don't have a failure to report issue with Mr. Burnett. What we have is failing to follow safe forklift operation procedure and misconduct that resulted in damage to property and could have resulted in damage to people, harm to people. I mean, he has three knockdowns, these, you know, carts that he's carrying with his forklift. You can hurt people with a forklift if you're asleep on the forklift with it's running too, and you didn't fire that person, right? I mean, you could... Did Washburn also fall asleep with the forklift running? It was running. It was not an operation. There's no evidence in the record that it was moving. Backwards, ramp at high speed. I mean, at some point we're parsing the comparators in such a way that you wonder if this is a jury question and not a summary judgment question. Well, the individual who was speeding up a ramp backwards and hit a door was terminated, and I think Kelly McDonald, who was the site HR manager at the time, you know, in her testimony drew the distinction that I think is helpful to the court, and that is, look, there are differences between blatant violations of procedure and trying to navigate in tight spaces when it comes to causing a collision with a forklift. Your key point is... I mean, it's true. Burnett's was an open space, so your key point is, you know, difficulty of the usage at that point. If somebody is operating a forklift and they're trying to turn around and they hit the shelving next to them, right? I mean, that's a mistake, and that's an accident that might happen, and the testimony is that that does happen. What doesn't happen is driving forward with an obstructed view without braking directly into something, backing up, and then rather than even seeing what you hit, continuing to drive forward. I mean, this is a manufactured site floor. I mean, I assumed he could see what he was doing. No, the video shows him driving forward with knockdowns in the pole. The pole has a safety barrier around it. He hits it so hard that that breaks in half. One side goes flying. The other half is stuck to his forklift. He then backs up and then continues to drive forward without any checking of what he's hit. I see. So when he drives forward is when he, quote, drives around. Drives around the pole, but he's still driving forward with an obstruction at one point. We're really getting into the weeds here, but he doesn't hit something, but one of the knockdowns falls off, which causes problems. I think the distinction there is risk of harm to others versus harm maybe to oneself or the product, right? William, I mean, Terrence Burnett and Chris Lawley could have hit people. There's no evidence that William Washburn or Derek Hampton were in a position where they could have caused harm to others. I mean, isn't this going to, you know, sort of the McDonnell-Douglas ping-ponging, causal connection, fairly low barrier, that adds to that. You can present all of this at the third stage. You could even conceivably get summary judgment on it or easily present it to a jury and possibly win. I mean, isn't that the kind of normal way to go forward with these things? I think that's what we, we briefed at the district court level, Judge Boggs, was, you know, here's the prima facie stage. We think he loses here, and we think he loses here because we have an intervening legitimate cause. However, if you disagree with us, here's pretext and we think we still win because the comparators aren't comparators. There you say we still win not only in a factual way, but at summary judgment. Correct, correct, at summary judgment. Summary judgment remains proper. Turns out that doesn't get decided, but what's before us here is what we have, which is summary judgment granted because of no causal connection. We have to decide whether that's reversible or not. Is that sort of fair procedurally where we are? I think, I think that is a fair representation of where we are, and, and what this court can do is, is decide Judge Hale correctly applied the law or that Judge Hale should have looked at comparators at the prima facie stage if the court finds that he did not, or it could, it could affirm summary judgment on the pretext grounds utilizing its de novo review. And are you, but Judge Boggs I think is also asking you, you know, behind door number three, just handle the prima facie and then send everything back to Judge Boggs on the second and third. I mean, Judge Boggs. Why would I, why would I say Judge Boggs? Because I want him to have to do it. But so anyway, back to Judge Hale and you do McDonnell Douglas two and three. What's your take on whether that option behind door number three is a good idea? I think it's an inefficient, I think door number three is inefficient because I think, in my view, we're going to get summary judgment on pretext and end up right back in front of you. And I think this court could, if this court fought, if this court believes that there was error at the prima facie stage. Do you think pretext inquiries are the same at prima facie and at the third prong? I don't, no. I think the pretext analysis is, look, is there, is there enough here, even if limited, that there is a presumption that some discriminatory retaliatory act happened? Is there an inference of illegal activity? Okay, there is. Now, employer, what is your reason for why you did what's being challenged? And then it's the final burden to say, well, that's not true. And here's the evidence that shows why it's not true. And I do think that they are different levels of scrutiny that are applied. And it's easier for the plaintiff at prima facie, easier for the defendant at the third prong, would be the way you put it. I mean, that is, I don't know that it's easier for the defendant. The burden always remains with the plaintiff at pretext. But sure, we can examine more evidence at the pretext stage than maybe you would at the prima facie stage. I mean, it's always, it's always easier to win before the jury than at summary judgment in the, in the sense of there has to be undisputed facts at summary judgment, and you can win on the dispute before the jury. And that's why lots of people defeat summary judgment and then lose at the jury and vice versa. I don't know that it's necessarily easier in front of a jury, but, but I understand, I understand the point. It struck me that one of the things that might be different between the prima facie causation analysis and a pretext analysis is that it could shift a little bit based on how the employer articulates the legitimate justification. And so like, you know, perhaps here the plaintiff can go through and say, hey, look, you know, other people who did really bad things too weren't fired. And, and I was fired. And, you know, I didn't hit this any worse than this other person hit something or them sleeping or whatever it is, right? But then maybe if the employer comes back and says, yeah, well, we fired you for, you know, hitting this pole and stuff, but also your disciplinary history leading up to this was so bad that, you know, it didn't have to meet the same, you know, it didn't have to be the accident. It was fine that it was the same as everybody else's or things like that. And so now maybe you evaluate pretext based on this kind of different justification. Now I have to say, I don't see that in, in your briefing or in the, any of the documentation about why you, why you fired this gentleman, right? But, but that's a way I think that sometimes the pretext analysis changes from the causation analysis. I think that's right, Judge Bloom-Katz. And, you know, if there's an instance where you are terminating an employee for poor performance, right, you know, and, and there may be more justification needed, but in a situation where it's here, it's a single act. And termination is taken very quickly after that. I understand there was a short delay because the HR manager was on her honeymoon. But, I mean, it's not as if the company waited, you know, a month, two months to terminate Mr. Burnett after this happened. It was quick. He was sent home, he was suspended, and then he was notified that he was terminated. And, you know, I think that, and, and for the other comparator that we've identified, Chris Lawley, if you look at his, his termination form, and that's in the record, I apologize, it's record 37-1, page ID 1235. I mean, his corrective action form indicates that he had no prior disciplinary history. He was terminated. I'm sorry? I mean, I think your, your friend on the other side, right, don't they argue that, that Lawley is fired after this lawsuit, and the lawsuit kind of raising the issue that you're treating me different than others? Judge, honestly, I don't recall Christopher Lawley coming up in, coming up in appellant's briefing at all. But it is true that he was terminated a year after Mr. Burnett, but the issue with William Washburn hitting a fan, and that falling six days later happened after, you know, four months after Mr. Burnett was terminated. Derek Hampton's knockdowns issue happened in November of 2022. I mean, all of plaintiff's comparators are post-termination comparators. So certainly, if, if, if the appellant wants to look at others who received discipline or did not receive discipline after his termination, I think Christopher Lawley remains equally as relevant in that regard. We understand your argument. Thank you so much, judges. We'll hear rebuttal from, um. Your Honor, just briefly on Christopher Lawley. He is correct. I did not brief on it, but it was written down in my paper to address. He was, he was terminated a year after this lawsuit was filed. Our other three comparators, Mr. Washburn actually did struck, strike the fire alarm pull before Mr. Burnett was terminated. So I think, also, the case law doesn't require you to show that Mr. Burnett was treated differently than all employees, just some employees. And I think. It seems like his main point is that there is a difference in kind between the, we'll say, just the three accidents. What's your response to that? I think that Jackson just kind of warned against this analysis and said that when we're looking at seriousness, it's hypothetical and that should be given to the, to the jury. We really should be looking at the results, which is a damage to property or whatever it may be. And I think that Jackson handles that. It addresses this exact concern that these, these guesses of what could have happened should be addressed. Well, I guess the way he might put it was, and I thought he did put it, was that Burnett's case, the way he drove really could have run into a human being and that really didn't seem like a possibility with the others. And it's the human risk as opposed to property damage risk that distinguishes them. Right, but Jackson warned against this, saying that hey, we're looking at the thing that actually happened because we know what happened. We cannot speculate because inferences need to be drawn in favor of a non-moving party of what would have happened. So I think that that's, in this case, I mean the jury should be making those decisions. Again, I think that the general rule here is that there's a lower level, a lower burden of proof, I would say, to meet the causation phase. And I think that there is a higher burden at the pretext stage. Your preference is to just handle the Amalfitia case or is your preference to do the whole McDonnell-Douglas analysis even though Judge Hale just did one part of it? Either. I'm on that side of the room. So I think that this court, DeNovo, could review the comparators but I also do think that you could send it back down to finish off. You have a preference. I have, it's, I think that the comparators are so strong here that this court could rule on them. I think it's, all the evidence is laid out. I think that it is a DeNovo review. We can look at everything and decide for these true comparators and is there enough information to get to a jury. Okay, thanks very much. Appreciate both of your oral arguments for answering our questions for which we're always grateful and for your helpful briefs. Thank you. The case will be submitted and the clerk may adjourn court.